# IN THE COURT OF APPEALS OF IOWA

No. 19-1892
Filed February 5, 2020

**IN THE INTEREST OF J.G.,**
**Minor Child,**

**L.B., Father,**
    Appellant.
_____


Appeal from the Iowa District Court for Polk County, Monty Franklin, District
Associate Judge.


A father appeals the juvenile court order terminating his parental rights to
his child. **AFFIRMED.**


Shireen L. Carter of Shireen Carter Law Office, PLC, Norwalk, for appellant
father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant
Attorney General, for appellee State.

Jenna Lain of The Law Office of Jenna K. Lain, Corydon, attorney and
guardian ad litem for minor child.


Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

The district court terminated a father's parental rights to his child pursuant to several statutory grounds. On appeal, the father "concedes that the statutory grounds are met pursuant to Iowa Code section 232.116(1)(h) but maintains that termination of his parental rights is not in the child's best interest." *See* Iowa Code § 232.116(2) (2019). He also argues the department failed to make reasonable efforts to reunify him with the child. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

The department of human services became involved with the family after receiving reports of sexual abuse, physical abuse, and neglect of several children in the mother's home. The mother listed a man outside the home as the putative father of the child involved in this proceeding. The department scheduled paternity testing, which confirmed him as the biological father.

Prior to the child's birth in 2015, the father spent six and one-half years in prison for sexually abusing two teens. He was required to register as a sex offender. When he was established as the father of this child, the department caseworker asked him to provide documentation that he completed mental-health services "to address his perpetrating behaviors." The father did not comply with the request. He also failed to complete a mental-health evaluation requested by the department.

The father had no interaction with the child for the first two years of her life. He only had two visits with her before the permanency hearing, and he left ten minutes into the second visit. Although he completed nine visits after the permanency hearing, the goal by this time had shifted from reunification to

termination. Because the father was a virtual stranger to his child, we conclude her best interests would not have been served by transferring her to his custody.

The father argues that the department is at fault for the minimal contacts with his daughter. He notes that he asked the agency to schedule visits at a location midway between the child's foster home in Des Moines and his home in Kalona, Iowa, but the department refused to accommodate him.

The father's request was considered by the district court, which ruled, "[U]ntil [the father] shows consistent participation in visits with [the child] the location of the visits will be at the discretion of the department and what is determined to be the best interests of the child." The order was filed approximately sixteen months before the termination hearing.

As noted, the father only belatedly attended visits on a regular basis. His late compliance, however, did not absolve the department of its reasonable efforts obligation. *See In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019) ("We think the reasonable efforts obligation runs until the juvenile court has entered a final written order of termination."). Even if the father "waited [to consistently visit the child] until the goal was no longer reunification with a parent," and even if his decision to do so was based "on his own selfish reasons," as the department reported, the agency retained its reasonable-efforts obligation through the date of decision. Once the father began to exercise visits consistently, the department was required to reassess his request for a closer visitation site. The department's summary rejection of the request was not justified by his late compliance.

That said, the department continued to pursue its case permanency plan and continued to provide services, including visits in Des Moines. *See id.* ("[The

department's] obligation to provide reasonable efforts until a final written termination order does not necessarily require [the department] to provide reasonable efforts toward *reunification* . . . . Where it is inappropriate to return a child to the family home, the legislature specified that 'reasonable efforts shall include the efforts made in a timely manner to finalize a permanency plan for the child.'" (citing Iowa Code § 232.102(10)(a))). We conclude the agency's provision of other services satisfied its reasonable-efforts mandate.

We affirm the termination of the father's parental rights to his child.

**AFFIRMED.**